People v Johnson (2023 NY Slip Op 04075)

People v Johnson

2023 NY Slip Op 04075

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, CURRAN, OGDEN, AND GREENWOOD, JJ.

577 KA 22-01547

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MELVIN JOHNSON, DEFENDANT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 

 Appeal from an order of the Onondaga County Court (Thomas J. Miller, J.), entered July 11, 2022. The order determined that defendant is a level three risk pursuant to the Sex Offender Registration Act. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law and in the exercise of discretion by determining that defendant is a level two risk pursuant to the Sex Offender Registration Act and as modified the order is affirmed without costs.
Memorandum: Defendant appeals from an order determining, inter alia, that he is a level three sex offender pursuant to the Sex Offender Registration Act ([SORA] Correction Law § 168 et seq.). Defendant contends that County Court erred in conducting its analysis on his request for a downward departure from his presumptive level three risk and that he should be granted such a departure under the circumstances of this case. We agree.
"Under SORA, a court must follow three analytical steps to determine whether or not to order a departure from the presumptive risk level indicated by the offender's guidelines factor score" (People v Gillotti, 23 NY3d 841, 861 [2014]; see generally Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4-5 [2006] [Guidelines]). "At the first step, the court must decide whether the aggravating or mitigating circumstances alleged by a party seeking a departure are, as a matter of law, of a kind or to a degree not adequately taken into account by the [G]uidelines" (Gillotti, 23 NY3d at 861). "At the second step, the court must decide whether the party requesting the departure has adduced sufficient evidence to meet its burden of proof in establishing that the alleged aggravating or mitigating circumstances actually exist in the case at hand" (id.). "If the party applying for a departure surmounts the first two steps, the law permits a departure, but the court still has discretion to refuse to depart or to grant a departure" (id.). "Thus, at the third step, the court must exercise its discretion by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant's dangerousness and risk of sexual recidivism" (id.).
Here, we agree with defendant that the court erred as a matter of law in conducting the downward departure analysis when, despite determining that defendant met his initial burden by identifying his current physical and medical condition as a mitigating circumstance not adequately taken into account by the Guidelines and proving the existence thereof by a preponderance of the evidence, it failed to weigh the aggravating and mitigating factors to determine whether a departure from the presumptive risk level was warranted and instead concluded that, given the egregious nature of the underlying sex offense, there were no circumstances under which it could grant a downward departure, even if the mitigating factor outweighed any aggravating factors. Contrary to the court's reasoning, it is well established that [*2]"[w]here, as here, a defendant meets the initial burden, under step three of the analysis the court must exercise its discretion by weighing the mitigating factor [and any aggravating factors] to determine whether the totality of the circumstances warrants a departure to avoid an overassessment of the defendant's dangerousness and risk of sexual recidivism" (People v Wright, 215 AD3d 1258, 1259 [4th Dept 2023] [internal quotation marks omitted]; see Gillotti, 23 NY3d at 861). Nonetheless, despite the court's error, inasmuch as "the record is sufficient for us to make our own findings of fact and conclusions of law, we may review . . . defendant's request for a downward departure instead of remitting" (Wright, 215 AD3d at 1259).
Contrary to defendant's contention with respect to the first step of that review, we conclude that his "performance in educational and vocational programs was adequately taken into account in assessing his presumptive risk level inasmuch as he was assessed zero points for conduct while confined despite having an extensive history of disciplinary infractions" (People v Forshey, 201 AD3d 1352, 1353 [4th Dept 2022], lv denied 38 NY3d 907 [2022]; see People v Smith, 108 AD3d 1215, 1216 [4th Dept 2013], lv denied 22 NY3d 856 [2013]).
With respect to the second step of the analysis, although an offender's response to sex offender treatment, if exceptional, may provide a basis for a downward departure (see Guidelines at 17; People v Mann, 177 AD3d 1319, 1320 [4th Dept 2019], lv denied 35 NY3d 902 [2020]), we conclude that defendant failed to meet his burden of proving by a preponderance of the evidence that his response to treatment was exceptional (see Mann, 177 AD3d at 1320; People v June, 150 AD3d 1701, 1702 [4th Dept 2017]; People v Santiago, 137 AD3d 762, 764 [2d Dept 2016], lv denied 27 NY3d 907 [2016]). Nonetheless, "if an offender's presumptive risk level is [two or three] but [the offender] suffers from a physical condition that minimizes [the] risk of reoffense, such as advanced age or debilitating illness, a downward departure may be warranted" (Guidelines at 5; see Correction Law § 168-l [5] [d]). Here, the uncontroverted medical evidence submitted by defendant establishes that, nearly 30 years after the underlying sex offense, defendant is now a 62-year-old paraplegic who is confined to a wheelchair and has also suffered from several medical conditions including colon cancer and chronic obstructive pulmonary disease (see People v Sanchez, 186 AD3d 880, 882-883 [2d Dept 2020]; see also People v Stevens, 55 AD3d 892, 894 [2d Dept 2008]). Defendant thus met his initial burden by demonstrating, by a preponderance of the evidence, the existence of a mitigating circumstance that tends to establish a lower likelihood of reoffense or danger to the community, i.e., that he suffers from a combination of debilitating "physical condition[s] that minimize[] his risk of reoffense" (Guidelines at 5; see Sanchez, 186 AD3d at 882; Stevens, 55 AD3d at 894; cf. People v Williams, 172 AD3d 1923, 1924 [4th Dept 2019], lv denied 33 NY3d 913 [2019]; see generally Wright, 215 AD3d at 1259).
At the third step of the analysis, upon exercising our discretion by weighing the abovementioned mitigating circumstance, which minimizes defendant's current dangerousness and risk of reoffense, against the aggravating circumstances, including the egregious nature of the underlying sex offense committed nearly 30 years ago (see Wright, 215 AD3d at 1259-1260), we conclude that the totality of the circumstances warrants a downward departure to a level two risk because classifying defendant consistent with his presumptive level three risk would result in an overassessment of his dangerousness and risk of sexual recidivism when, instead, the record establishes that defendant represents a moderate risk to reoffend (see Correction Law § 168-l [6] [b]; Sanchez, 186 AD3d at 882-883; see generally Gillotti, 23 NY3d at 861). We therefore modify the order accordingly.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court